IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>      Respondent,<br><br>      v.<br><br>JOSHUA KENDALL RESOR,<br><br>      Appellant. | No. 87722-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Joshua Resor appeals his convictions after a jury trial for one count of assault in the second degree, one count of malicious mischief in the second degree, and special verdicts finding that he committed both crimes while armed with a deadly weapon. His sole contention on appeal is that the trial court erred when it granted the State's request to issue an aggressor instruction to the jury, but because the trial court did not err in so doing, we affirm.

FACTS

Joshua Resor was arrested following Arthur Rodrigues' report to law enforcement officers that a man, later identified as Resor, had attacked him with a knife and slashed the tires of his car. The State's affidavit of probable cause indicated that Rodrigues reported that "he saw a couple fighting, and he attempted to intervene" and, in response, the man pulled out a knife, stabbed him in the arm, and slashed his car's tires. The State later charged Resor with one count of assault in the second degree while armed with a deadly weapon for his alleged conduct

against Rodrigues and one count of malicious mischief in the second degree while armed with a deadly weapon for his alleged damage to Rodrigues' vehicle.

Prior to trial, Resor notified the State that his defense theory as to both counts was self-defense. A three-day jury trial commenced in December 2024. At trial, the State argued the jury should disregard Resor's self-defense theory because Resor's use of a knife against Rodrigues was prompted by Resor's own aggressive conduct toward a woman; that Resor had been the aggressor. Resor responded that the jury should accept his self-defense claim because he had told Rodrigues that the woman was his wife and she was "freaking out on drugs" but Rodrigues nevertheless intervened and threw him to the ground, which prompted his need to defend himself with his pocket-knife.

Rodrigues testified during the State's case in chief as follows: In the daylight of the early morning in mid-September, sometime prior to 7:00 a.m., he saw "two people tussling over on the corner" of an intersection of a residential neighborhood in Lynnwood; he described the tussling as "throwing one person around"; he initially thought it was "high school kids just joking around, horseplay," but then thought "something seemed a little bit off, so [he] decided to pull over"; he could not initially identify the gender of the individuals and could not hear anything; he lowered the passenger-side window after pulling up to the curb and observed a man, later-identified as Resor, standing over another person.

Rodrigues further testified that he asked what was going on, and Resor told him "that everything was all right and his wife—was not doing so well with drugs." Rodrigues inferred that the woman was "being held down on the ground" by Resor

and stated Resor "tried to dismiss [him] away and tried to get [him] gone." He noticed that the woman who Resor identified as his wife was "grunting, trying to get him off of her," and heard her say that Resor was hurting her.

The woman then freed herself from Resor and stood up, moved around Rodrigues' car, and placed the car between herself and Resor. Rodrigues heard her tell Resor to get away from her, and Rodrigues saw Resor follow her around his parked car while she was "trying to get away from [Resor] as fast as she c[ould]."

Rodrigues then got out of his car and attempted to calm the situation down; he told Resor to "'just let her go'" or "something along those lines." Rodrigues did not hear Resor make any threats toward him or any threats between the two individuals. He then saw Resor grab the woman, heard her "start screaming in her place," or "screaming in panic," and he decided at that point to intervene in the situation. Rodrigues testified, "When she was screaming, to me, it expressed extreme distress. And he wasn't letting go." When the prosecutor asked him whether he was concerned that something was going to happen to the woman, he answered, "Yes."[1]

Resor then testified in his own defense and, on direct examination, stated as follows: On the morning in question, he was attempting to calm his wife down

---

[1] Rodrigues also testified as to how he intervened and the events that followed: He approached Resor, grabbed his backpack, and "rolled him onto the ground." Resor responded by stating, "'Let's see how you do with a knife'" and "'Now you're going to get stabbed.'" He then pulled an implement from his pocket, approached Rodrigues, and swung the implement at him several times. Rodrigues felt a dull pain in his arm, saw that he was bleeding, and ran to his car and got in. While inside, he watched Resor go "around [his] car, he slashed [his] tires once, and then he walked away, and then he came back and slashed another set of tires." Rodrigues dialed 911 and law enforcement officers later arrived on the scene.

because "[s]he either had too many drugs or just been up for a few days"; he did not notice that someone was watching his interaction with her until he felt himself thrown down to the ground on his stomach and saw a man "quite a bit" larger than him; he drew his pocketknife in response and tried to defend himself.[2]  On cross-examination, he testified that his wife was "freaking out" and screaming, he had never seen Rodrigues before that interaction, he recalled that Rodrigues was wearing a sweatshirt, and he heard Rodrigues tell him to give her some space.

Prior to closing, in response to Resor's self-defense theory, the State requested that the court issue an aggressor instruction to the jury, arguing that Resor's own actions created his necessity to act in self-defense and the jury should be able to consider whether self-defense should be available to him based on the evidence presented under his theory of the case.  Resor objected and argued that since Rodrigues was the named victim of the charged crime, in order for the trial court to issue an aggressor instruction to the jury, the trial evidence must support that Resor intentionally acted aggressively toward Rodrigues, rather than toward a third-party.

The court determined that the record supported the issuance of the aggressor instruction and granted the State's motion.  Thereafter, the trial court provided both Resor's self-defense instruction and the State's aggressor instruction to the jury.  The aggressor instruction, no. 14, read as follows:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer, or attempt to use force upon or toward another person.  Therefore, if you find beyond a reasonable

---

[2] He also testified that he slashed Rodrigues' car tires in order to prevent Rodriges from chasing him while he fled.

doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense. Words alone are not adequate provocation for the defendant to be the aggressor.

The jury later convicted Resor as charged, and the court imposed a total term of confinement of 24 months, which included 18 months for the deadly weapon enhancements to be served consecutively to the base sentence, followed by 18 months of community custody.[3]

Resor timely appealed.

ANALYSIS

Resor asserts that the trial court erred when it issued the aggressor instruction to the jury. Resor does not establish an entitlement to appellate relief.

We have recognized that

Jury instructions are generally sufficient where they are supported by substantial evidence, properly state the law, and allow the parties an opportunity to satisfactorily argue their theories of the case. *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). The adequacy of jury instructions is reviewed de novo. *Id.*

*State v. Espinosa*, 8 Wn. App. 2d 353, 360-61, 438 P.3d 582 (2019).

With regard to the aggressor instruction, our Supreme Court has directed that trial courts must "use care in giving an aggressor instruction" but should issue such an instruction "where called for by the evidence." *State v. Riley*, 137 Wn.2d 904, 910 n.2, 976 P.2d 624 (1999). Indeed, "aggressor instructions are disfavored only where they are not justified." *State v. Grott*, 195 Wn.2d 256, 271, 458 P.3d 750 (2020). Accordingly, we have explained that a trial court

---

[3] The court also ordered $928.38 in restitution to Rodrigues and issued a no-contact order protecting Rodrigues from Resor.

may appropriately give an aggressor instruction when "there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense." *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). *If there is conflicting evidence about whether the defendant provoked the altercation, the aggressor instruction is appropriate*. *Id.* at 910.

*State v. Hatt*, 11 Wn. App. 2d 113, 135, 452 P.3d 577 (2019) (emphasis added)

Furthermore, although "words alone do not constitute sufficient provocation" for the issuance of an aggressor instruction, words may be relevant in establishing a course of conduct to support such instruction. *See Riley*, 137 Wn.2d at 911, 909. Finally, although the defendant's alleged provoking act must be intentional, it "does not need to be unlawful." *Espinosa*, 8 Wn. App. 2d at 362.[4]

Here, Resor does not dispute that evidence presented at trial supported that he restrained a woman on the ground who said that he was hurting her, told Rodrigues that she was his wife, chased her after she fled from him and had told him to stay away from her, and intentionally held her in place by grabbing her arm after which she began to scream. Resor also does not dispute that the trial evidence supported that Rodrigues was present, observed those interactions, and intervened when Resor restrained the woman and she screamed. Instead, Resor presents two bases on which he contends that the trial court erred as a matter of

---

[4] In his reply brief, Resor requests that we limit the scope of the potential intentional acts that could implicate the aggressor instruction by requiring that such acts be only those that constitute a crime. However, Resor's request is contrary to controlling authority.

As explained, we have expressly held that the underlying intentional act need not be unlawful. *Espinosa*, 8 Wn. App. 2d at 362. Moreover, the pattern instruction for the aggressor instruction sets forth that "*any* intentional act" by the defendant qualifies so long as it is one "reasonably likely to provoke a belligerent response." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04 (5th ed. 2021) (emphasis added). Thus, our legal authority contemplates a broad range of intentional acts that could result in the issuance of an aggressor instruction so long as those acts are of a type reasonably likely to provoke a belligerent response. Accordingly, we deny Resor's request.

law when it issued the aggressor instruction to the jury: that the provoking act must be committed against the named victim and the course-of-conduct analysis employed by the trial court here applies only to cases involving "very violent" provocation. Neither contention establishes an entitlement to appellate relief.

Resor first relies on *State v. Wasson*, 54 Wn. App. 156, 772 P.2d 1039 (1989), a decision from Division Three, for the broad proposition that an aggressor instruction can never be issued when a defendant claiming self-defense engages in a provocative act toward a third-party that causes the victim of the charged crime to intervene. Because subsequent appellate decisional authority, including from Division Three, has repeatedly either implicitly or explicitly rejected such a narrow interpretation of *Wasson*, his reliance thereon is unavailing. For instance, three years after Division Three published *Wasson*, our Supreme Court issued its decision in *State v. Davis* wherein the court ruled as follows:

> Although there was conflicting evidence about what happened on [the day in question], evidence presented at trial supported the giving of an aggressor instruction. There was testimony that Davis was the first to strike the others during the first encounter on the landing. After that initial scuffle, Davis reemerged from his apartment with a knife behind his back. *There was testimony that Davis pushed Gudmundson, and Locke then intervened, only to be stabbed by Davis.* If true, those were "intentional act[s] reasonably likely to provoke a belligerent response". *State v. Wasson,* 54 Wn. App. 156, 159, 772 P.2d 1039, *review denied,* 113 Wn.2d 1014, 779 P.2d 731 (1989). All of this evidence supports the giving of an aggressor instruction.

119 Wn.2d 657, 665-66, 835 P.2d 1039 (1992) (emphasis added) (some alteration in original). Thereafter, in *State v. Cuellar*, we noted that the appellant therein, citing to *Wasson*,

contend[ed] that an aggressor instruction [wa]s improper as a matter of law when the alleged act of provocation is directed to a third party and not toward the eventual assault victim. She argue[d] that because the evidence established that she was approaching an officer other than Officer Clark, the trial court should not have given the aggressor instruction. *Wasson* provides no support for this proposition.

In *Wasson*, the court held that the evidence was insufficient to support an aggressor instruction where Reed, a neighbor, intervened in a fight between Wasson and his cousin. After striking Wasson's cousin several times, Reed approached Wasson, who shot Reed. The court concluded that Wasson could not be the aggressor because the fight between Wasson and his cousin was not related to Reed's assault and the only provoking act was therefore the assault itself. *Wasson*, 54 Wn. App. at 159-60.

But the *Wasson* court expressly noted that the defendant's intentional acts directed to a third party could justify an aggressor instruction if they were likely to provoke a belligerent response from the ultimate victim. *Id.* at 160-61, citing *State v. Thomas*, 63 Wn.2d 59, 385 P.2d 532 (1963), *overruled on other grounds by State v. Rogers*, 83 Wn.2d 553, 520 P.2d 159 (1974). Relying on *Wasson*, *Washington courts have repeatedly upheld the giving of an aggressor instruction where the defendant's provoking act was directed to a third party*. *See, e.g.*, *State v. Davis*, 119 Wn.2d 657, 666, 835 P.2d 1039 (1992) (evidence that defendant pushed a woman was an intentional act "'reasonably likely to provoke a belligerent response'" from the woman's companion who intervened to assist her), quoting *Wasson*, 54 Wn. App. at 159; *State v. Kidd*, 57 Wn. App. [95,] 100[ 786 P.2d 847 (1990)] (jury could reasonably find that defendant's shooting of two people on a bus and subsequent flight was sufficient to provoke response from police).

164 Wn. App. 701, 704, 262 P.3d 1251 (2011) (unpublished portion)[5] (emphasis added).

Then, four years later, Division Three issued its unpublished decision in *State v. Henkleman*,[6] in which it stated as follows:

---

[5] Under GR 14.1(c), we may cite to unpublished portions of opinions as necessary for a well-reasoned opinion. *Cuellar* is included here only to emphasize our prior rejection of the interpretation of *Wasson* offered by Resor.

[6] No. 33003-6-III, slip op. 10-11 (Wash. Ct. App., Aug. 11, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/330036.unp.pdf.

Mr. Henkleman argues that his attack of Mr. Heath was not intended to provoke a response from Mr. Cooper or Mr. Poole. In support of this argument, Mr. Henkleman relies on this court's decision in *Wasson*.

While the provoking act must be intentional, it cannot be "an act directed toward one other than the actual victim, *unless the act was likely to provoke a belligerent response from the actual victim*." *Kidd*, 57 Wn. App. at 100 (citing *Wasson*, 54 Wn. App. at 159-61). Further, "[i]t has long been established that the provoking act must also be related to the eventual assault as to which self-defense is claimed." *Wasson*, 54 Wn. App. at 159 (citing *State v. Hawkins*, 89 Wash. 449, 455, 154 P. 827 (1916)).

*Wasson* is distinguishable. In *Wasson*, the court reversed the defendant's conviction and ordered a new trial after it determined that the trial court erroneously provided the jury with an aggressor instruction. *Id.* at 161. There, the defendant was involved in an altercation with an individual. *Id.* at 157. Eventually, a third party appeared and aggressively approached the defendant. *Id.* at 157-58. The defendant shot the third party and, at trial, claimed self-defense. *Id.* The court concluded that no evidence had been presented that the defendant acted to provoke an assault from the third party. *Id.* at 159. The third party was not interfering to protect the other individual; rather, the third party actually assaulted the other individual prior to aggressively approaching Mr. Wasson. *Id.* at 157-58.

Unlike *Wasson*, where the original assault was not related to the eventual assault, Mr. Henkleman's assault of Mr. Heath was related to the eventual assaults on his friends who were coming to his rescue. While Mr. Henkleman's act of attacking Mr. Heath was not directed at either of Mr. Heath's friends, *a reasonable juror could find that Mr. Henkleman's attack on Mr. Heath was likely to provoke a response from Mr. Heath's friends.* The giving of the first aggressor instruction, under these facts, was not error.

(Emphasis added) (alteration in original).[7]

Taken together, the foregoing decisional authority reflects that a trial court does not err as a matter of law when it issues an aggressor instruction in a circumstance when the evidence presented at trial supports that a defendant's

---

[7] Pursuant to GR 14.1, we may cite to unpublished opinions as necessary for well-reasoned opinions. We analyze *Henkleman* because it was cited in the State's response brief pursuant to GR 14.1 and to demonstrate the procedural fact of consistent holdings regarding the scope of *Wasson* as part of our broader reasoning for rejecting Resor's contention on that point.

intentional act toward a third-party was reasonably likely to provoke a belligerent response from the victim of the charged offense. Resor does not present persuasive argument in support of departing from such long-standing precedent. Thus, his challenge presented in reliance on *Wasson* fails.[8]

Resor next asserts that his alleged course of conduct was inadequate as a matter of law to warrant the issuance of the aggressor instruction in this case. This is so, he contends, because "[i]n practice, courts have applied this course-of-conduct analysis to affirm instructions primarily in very violent cases." In so arguing, he does not establish trial court error.

In support of his contention, Resor relies on *State v. Grott* and *State v. Zeigler*, 30 Wn. App. 2d 780, 546 P.3d 534 (2024). He correctly identifies that the aggressor instruction issued to the jury in those cases was predicated on trial evidence reflecting that the defendant's provoking act was violent. *See Grott*, 195 Wn.2d at 273 (defendant fired "48 shots over the course of several minutes" from a firearm); *Zeigler*, 30 Wn. App. 2d at 784 (defendant's firing of gun killed victim). Significantly, however, neither decision sets forth the proposition that evidence of a violent provoking act is a *prerequisite* to the issuance of an aggressor instruction.

---

[8] Resor nevertheless asserts that "[c]ourts rarely use first-aggressor instructions when a person claims self-defense against a third-party, intervening attacker" and "first-aggressor instructions are generally given where a question of fact remains as to who provoked a fight between two parties." Such an assertion does not establish an entitlement to relief. Resor does not present persuasive analysis in support of such contentions nor, for that matter, does he present authority in support of a proposition that the frequency with which an instruction is given in other cases is material to the consideration by an appellate court as to whether a trial court erred in issuing an instruction in a particular case on appeal.

Resor also cites to *State v. Kee*, 6 Wn. App. 2d 874, 879, 431 P.3d 1080 (2018), as support for the following statement in his briefing: "To warrant a first-aggressor instruction, the prosecution must offer sufficient evidence that a self-defender intentionally provoked their attacker and that the act was reasonably likely to provoke a belligerent response from the attacker." Resor's reliance is unavailing. Nowhere in the pin-cite that he provided does the court in *Kee* expressly or implicitly set forth the proposition that his briefing provided.

*See Espinosa*, 8 Wn. App. 2d at 362 (recognizing that defendant's provoking act need not be unlawful).

Similarly, Resor does not present argument or authority in support of the proposition that an aggressor instruction can be issued *only* in cases involving "very violent" provoking acts. And importantly, he does not present us with any decisional authority in which an appellate court determined that a trial court erred in issuing an aggressor instruction on the basis that the underlying act was not sufficiently violent. Given all of this, he does not establish that his alleged course of conduct was insufficient as a matter of law to serve as a basis for the issuance of an aggressor instruction.

Resor's remaining potential avenues for relief are either that the trial court's decision to provide the aggressor instruction in this matter prevented him from arguing his theory of the case to the jury or that insufficient evidence supported the issuance of the instruction. Neither is availing to him. First, it is undisputed that he was able to present his self-defense theory to the jury in opening statements and closing argument, he provided evidence in support of his self-defense theory at trial, and the jury was instructed on his theory just prior to deliberation. *See Espinosa*, 8 Wn. App. 2d at 360-61.

Additionally, the trial record contains sufficient evidence to support the issuance of the aggressor instruction. Taken in the light most favorable to the State, the evidence presented reflected that: Resor was restraining a woman on the ground; the woman told Resor that he was hurting her; Rodrigues arrived and inquired if everything was all right; Resor said that the woman was his wife, she

was intoxicated on drugs, and everything was all right; the woman nevertheless got up and began to flee from Resor; the woman told Resor to stay away from her; Resor nevertheless pursued her; Resor restrained the woman by grabbing her arm; and she panicked and screamed. The foregoing evidence is plainly sufficient to support the issuance of the aggressor instruction herein. Given all of this, Resor does not establish that the trial court committed instructional error. Accordingly, he is not entitled to appellate relief.[9]

Affirmed.

WE CONCUR:

---

[9] Given our resolution of this matter, we need not consider Resor's remaining assignment of error.